IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| GRITSTONE BIO, INC.,[1] | Case No. 24-12305 (KBO) |
| Reorganized Debtor. | Related Docket No. 712, 719 |

**REORGANIZED DEBTOR'S REPLY
TO FISHER ENTITIES' OPPOSITION TO OMNIBUS
OBJECTION (SUBSTANTIVE) TO CERTAIN CLAIMS (RECLAMATION CLAIMS)**

The above-captioned reorganized debtor (the "**Reorganized Debtor**," and prior to confirmation of the Plan (as defined herein), the "**Debtor**"), hereby replies to the *Opposition to Omnibus Objection (Substantive) to Certain Claims (Reclamation Claims)* [Docket No. 719] (the "**Opposition**") filed by Fisher BioServices, Inc. ("**Fisher**") and Life Technologies Corporation ("**Life Tech**" and together with Fisher, the "**Fisher Entities**") in response to the Reorganized Debtor's *Omnibus Objection (Substantive) to Certain Claims (Reclamation Claims)* [Docket No. 711] (the "**Claim Objection**").

**The Claim Objection Should be Granted Because the Debtor's Lender Is
Undersecured and the Fisher Entities Reliance on the Schedules Defeats Their Claim**

1. The Reorganized Debtor's Claim Objection should be granted and the Fisher Entities' Opposition overruled because the Fisher Entities have failed to satisfy the requirements for a reclamation claim under section 546(c) of the Bankruptcy Code. The Fisher Entities' reclamation claims are subject to the prior rights the Debtor's lender's liens in the goods subject to the reclamation demand, which the Fisher Entities concede. Instead, the Fisher Entities argue that the Debtor was "solvent" at the time of the reclamation demand (on the basis of the Debtor's

---

[1] The Debtor's mailing address is 4698 Willow Road, Pleasanton, CA 94588, and the last four digits of the Debtor's federal tax identification number is 9534.

heavily qualified schedules of assets and liabilities) but fail to recognize that if the Debtor was solvent (as the Fisher Entities contend and the Reorganized Debtor disputes) it undermines their reclamation entirely because insolvency is an essential element under section 546(c) of the Bankruptcy Code and applicable state law.

2. Pursuant to section 546(c) of the Bankruptcy Code, a seller may reclaim goods it has sold to an **insolvent** debtor if it establishes each of the following elements: (a) it has a statutory or common law right to reclaim the goods; (b) the goods were sold in the ordinary course of the seller's business; (c) the debtor was **insolvent** at the time the goods were received;[2] and (d) seller made a written demand for reclamation within the statutory time limit after the debtor received the goods. *In re Dairy Mart Convenience Stores, Inc.*, 302 B.R. 128, 133 (Bankr. S.D.N.Y. 2003). The Fisher Entities do not provide any evidence to support that each of the elements of a reclamation claim has been satisfied.

3. In support of the reclamation claims, the Fisher Entities rely on the disclosures the Debtor made when it filed its schedule of assets and liabilities. *See* [Docket No. 193] (the "**Schedules**"). The Schedules disclose that the Debtor had assets with an aggregate value of $1,149,870,404.82 as of the Petition Date and its total liabilities equaled $55,933,839.23, of which $41,327,099.19 constituted secured claims. Schedules, p. 18. The Fisher Entities' reliance on the Schedules is misplaced and wrong for more than one reason. First, and as discussed in greater detail below, the Debtor was insolvent and the Schedules do not purport to reflect the actual market

---

[2] It is not clear when the goods were received by the Debtor because the Fisher Entities' demands only provide the invoice date, not the date(s) the goods were delivered. Accordingly, the Reorganized Debtor reserves its rights on this issue as it relates to the validity of the reclamation claims asserted by the Fisher Entities.

value of assets but only the book value, which has little or no probative value. Second, if Debtors were "solvent," as the Fisher Entities contend, then the Fisher Entities must admit that they have failed to establish that the Debtor was insolvent at the time the goods were delivered to the Debtor. Thus, the very proof that the Fisher Entities rely on to support their reclamation claim contradicts one of the necessary elements (insolvency) they must prove for any reclamation claim.

4. As noted above, the Fisher Entities' reliance on the Schedules is misplaced in any event. The Fisher Entities fail to disclose to the Court that the Debtor's Schedules are heavily qualified. For example, the "global notes" to the Schedules disclose and qualify the disclosures by the following:

> **Net Book Value**. **In certain instances, current market valuations for individual items of property and other assets are neither maintained by, nor readily available to, the Debtor**. It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate assets for the Debtor to obtain current market valuations for its assets. **In addition, the Debtor is currently marketing its assets to be sold to a potential buyer for the highest or otherwise best price**. Accordingly, unless otherwise indicated, the Debtor's Schedules and Statements reflect **net book values** as of the close of business on September 30, 2024 in the Debtor's books and records. Additionally, because the book values of certain assets, such as equipment, work in process, patents, trademarks, copyrights, and other intangible assets, may materially differ from their fair market values, they may be listed as undetermined amounts. The Debtor's intellectual property was generally not capitalizable under GAAP. Furthermore, as applicable, assets that have fully depreciated or were expensed for accounting purposes may not appear in the Schedules and Statements if they have no net book value. **As such, market values may vary from net book value, and such variance may be material**. The Debtor reserves all rights to amend, supplement, or adjust the asset values set forth herein.

Schedules, pp. 4-5 (emphasis added).

5. In addition to the Fisher Entities failure to acknowledge the heavily qualified

disclosures in the Debtor's Schedules, they also fail to recognize the limited probative value that "book value" has when it comes to the valuation of assets. In the absence of any evidence regarding how book value relates to market or salable value, book value provides little or no evidence regarding the value of a debtor's assets. *See, e.g.*, *In re Roblin Indus., Inc.*, 78 F.3d 30, 36 (2d Cir. 1996) (noting that, although book values "are, in some circumstances, competent evidence from which inferences about a debtor's insolvency may be drawn," such values "are not ordinarily an accurate reflection of the market value of an asset").

6.    It is generally accepted that absent a showing that there has been a clear market failure (which the Fisher Entities do not allege), the behavior in the marketplace is the best indicator of value. *Bank of America Nat. Trust and Sav. Ass'n v. 203 North La Salle Partnership*, 526 U.S. 434, 457 (1999) (acknowledging "the best way to determine value is exposure to a market" rather than a determination by a bankruptcy judge); *VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 633 (3d. Cir. 2007) ("[a]bsent some reason to distrust it, the market price is 'a more reliable measure of the stock's value than the subjective estimates of one or two expert witnesses.'" (citation omitted)); *In re Granite Broad. Corp.*, 369 B.R. 120, 143 (Bankr. S.D.N.Y. 2007) ("there is no dispute that in many circumstances the best evidence of value is what a third party is willing to pay in an arm's length transaction").

7.    As reflected in the Claim Objection, the sale of the Debtor's assets demonstrated that the Debtor's secured lender was woefully undersecured as reflected by its allowed unsecured

deficiency claim in excess of $17,000,000.[3] This shows that the Fisher Entities' reclamation demand has no value unless and until the secured lender is paid in full, which the Reorganized Debtor does not expect.

8. In this context, the Fisher Entities concede that they "do not dispute that their reclamation rights are subordinate to that of the Prepetition Secured Lenders holding a blanket lien on substantially all of the Debtors' assets." Opposition, para. 17. Thus, the Fisher Entities' Opposition must be overruled as they concede their reclamation demand is either unenforceable because the Fisher Entities argue the Debtor was solvent or their demand has no value because their claims are subordinate to the rights of the Debtor's undersecured lender.

## Conclusion

9. For reasons set forth herein, the Claim Objection, and the record at the hearing, the Claim Objection should be granted and the Opposition overruled.

---

[3] *See, e.g.*, Plan, Section III.B.1. [Docket No. 601]. Class 1 voted to accept the Plan. *See Debtors' Memorandum in Support of Confirmation of Plan of Reorganization of Gritstone Bio, Inc. Under Chapter 11 of the Bankruptcy Code* [Docket No. 560], ¶ 77.

Dated: August 8, 2025            **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ James E. O'Neill*
Debra I. Grassgreen, (admitted *pro hac vice*)
John W. Lucas, (admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8750
Wilmington, Delaware 19899-8705
Tel:  302-652-4100
Fax: 302-652-4400
Email:    dgrassgreen@pszjlaw.com
              jlucas@pszjlaw.com
              joneill@pszjlaw.com

*Counsel to the Reorganized Debtor*